Donahue, J.
The evidence material to the issues joined in this case is the written contract and the correspondence between the parties touching the subject-matter of the contract. This contract, in brief, provides that plaintiff shall furnish f. o. b. cars at Bucyrus, Ohio, or Willoughby, Ohio, or at factory where made, one two-mould dry-press brick machine; one eight-foot dry pan; and one No. 1 agitating clay feeder within thirty days, or sooner if possible. .For these three articles, to be delivered in the manner and at one of the places specified, the defendant was to pay $2,450. Six hundred dollars of this purchase price was to be .paid in thirty days after arrival of machinery on *371 the cars at Coal Grove, Ohio, and the balance in three equal payments, due in four, eight and twelve months from date of the bill of lading. Bankable notes bearing legal rate of interest were to be given for deferred payments, these notes to be secured, if required by plaintiff, by personal or collateral security satisfactory to plaintiff. The contract further provided that deliveries should be made subject to delays caused by fires, strikes, accidents and causes beyond the control of the plaintiff, and that plaintiff assumed no liability for delays in shipment or while goods are in transit, and that the receiving of the material and machinery by the defendant would operate as a waiver of all claims for damages by reason of any delay in delivery however caused. It further provided that the title to the material and machinery should remain in the plaintiff until the full purchase price was paid in cash, with full right of access thereto until such payment was made, that such machinery was to remain the personal property of plaintiff and not be' attached as a fixture, and on payment of the full purchase price plaintiff agreed to transfer title to defendant. It further provided that the defendant should keep this machinery insured against fire in an amount sufficient to protect the plaintiff, the policies to contain a clause making them payable to the plaintiff as its interests might appear at time of loss, and in event such insurance was not obtained then the defendant to assume and pay all loss sustained by the plaintiff by fire from any cause.
The claim made by the defendant in its cross-petition that it was not fully advised of all the *372 terms of this contract when it signed the same is not important at this time. Nor do we think it was error for the trial court to reject evidence in reference thereto. It appears from the record that a copy of this contract remained with the defendant during all the time it was insisting upon performance. If the manager of the defendant could not, for the reason assigned, read this contract at the time he executed the same on behalf of the defendant, he could have read it and should have read it within a much shorter time thereafter than the date of the last demand by the defendant that plaintiff fully comply therewith.
In the absence of an action to reform for mutual mistake or to rescind the contract for fraud on the part of plaintiff, the terms of this contract must fix the rights and liabilities of both parties thereto.
That this contract is indivisible except by subsequent agreement of the parties is too plain for dispute. The delivery of part of the merchandise agreed to be delivered by the plaintiff is not a compliance with the contract, and, nothing else appearing, would not authorize plaintiff to .recover the value of any part of the merchandise furnished substantially less than named in the contract.
It is, therefore, important to determine, first, whether plaintiff performed the conditions and covenants of the contract on its part to be performed; or, if it did not, was its failure to do so justified by the conduct of the defendant? This machinery was to be furnished within a time certain named in the contract. It is claimed that this provision as to the time of shipment was waived *373 by the defendant. Upon this question there is a conflict of evidence, and, therefore, the judgment of the common pleas court in that behalf will not . be disturbed by this court. Upon the question of the delivery, however, the facts are not in dispute. On this subject there is no conflict in the evidence whatever, and it becomes solely a question of law whether delivery was made or tendered at any time before the bringing of this action to -recover the purchase price.
The contract provides for the delivery f. o. b. cars Bucyrus, or Willoughby, Ohio, or factory where made, for shipment to the defendant at Coal Grove, Lawrence county, Ohio. The dry pan that was shipped on the 8th day- of May was not consigned to the brick company. The bill of lading was taken in the name of the machinery company, endorsed by it and mailed to the brick company at Coal Grove, Ohio. This was not a serious departure from the provisions of the contract. It worked no inconvenience to the defendant-Even if it did, the purchaser accepted it without protest or complaint as to the manner of delivery. If the shipment of the dry-press machine and the agitating clay feeder had been so made, then if the time of delivery was in fact waived there would have been a substantial, if not a literal, compliance with the terms of the contract. When this second shipment was made the bill of lading was taken in the name of the machinery company, but it was never endorsed, delivered or tendered unconditionally to the brick company, as was done with the bill of lading for the dry pan. This merchandise was not delivered f. o. b. cars at Bucyrus, or Wil *374 loughby, or factory where made, for shipment to the brick company at Coal Grove, but was delivered to the common carrier for shipment to the machinery company at Coal Grove. The delivery to the common carrier was not actual or constructive delivery to the purchaser. There was no time in the history of this transaction when the machinery company parted with the possession or right of possession of this machinery, nor was there a time when the brick company had a right to demand or require the common carrier to deliver this machinery to it.
The petition avers that the defendant company is a corporation, with its office and place of business located at Coal Grove, Lawrence county, Ohio. This contract does not provide for any conditions precedent to the delivery of this machinery, yet the defendant in error, instead of making delivery as contemplated in the contract, shipped the goods in its own name to Coal Grove, and sent the bill of lading with four unsigned promissory notes to evidence the purchase price thereof to The First National Bank of Ironton, Ohio, and notified the defendant, as a condition precedent to its receiving this bill of lading, that its officers must travel to Ironton, Ohio, and there execute these notes and deliver them to the bank at Iron-ton, and upon that condition and not otherwise the bank would deliver to the defendant the bill of lading. These facts appear from the evidence offered by the machinery company in support of the averment of its petition that it delivered the property to the purchaser. This was not a compliance with the terms of this contract. It was not the *375 delivery contemplated in the contract. It was merely a conditional tender of delivery, and a condition that the machinery company had no right to impose. It was demanding payment in advance, while the fair construction of the contract, is -that the merchandise shall be delivered at one of the points named to a common carrier for shipment to the brick company, and that the brick company shall thereupon pay $600 thirty days after the arrival of the machinery on cars at Coal Grove, Ohio, and the balance in three equal payments, due in four, eight and twelve months from date of bill of lading, bankable notes, bearing legal rate of interest, to be given for deferred payments, bearing the same date as bill of lading. Applying to this transaction the same rule that would apply to a cash sale, under the provisions of this contract payment before delivery could not be demanded, nor could the purchaser be required to travel to Ironton and there make payment to the bank either before or after delivery. The fact that Ironton is not many miles distant from Coal Grove is not important. The petition avers that the purchaser’s place of business is Coal Grove, Ohio. It follows that if the seller could demand that payment be made at Ironton it could have demanded that payment be made in Columbus, Cincinnati of New York. The brick company had the full legal right to refuse any delivery other than the delivery provided for in the contract itself. The machinery company had no right to demand performance of any conditions precedent to delivery other than provided in the contract.
*376 j; In answer to this contention made by counsel on 'behalf of the plaintiff in error, counsel for defendant in error call our attention to paragraph 6 of the contract, in which paragraph it is agreed that the title to the material and machinery furnished shall remain in the machinery company until the full purchase price is paid, and insist that it is of no importance whether the machinery was delivered to the common carrier consigned to the brick company or consigned to the machinery company, as the machinery company had by the terms of the contract reserved to itself the ownership of this property. But with this contention we cannot agree. The brick company was to have possession, at least, of this property, and the possession of the property was never delivered to it, either in the manner provided for in the contract or in any other manner. On the contrary, delivery of possession was tendered to the brick company at a place and under circumstances not contemplated in the contract and upon its doing and performing certain things prior to the delivery that the contract did not require it to do.
I/ It is also insisted that delivery was complete j under the contract when the machinery was placed ’on cars at Bucyrus or Willoughby ready for shipment. That would have been true had the goods been consigned to the purchaser as the contract provided; but even if that had been done, under no possible construction of this contract would the purchaser have been required to travel to Bucyrus or Willoughby to deliver these notes before or even at the time of the consignment. A fair construction of the contract is that the notes were to be *377 delivered at Coal Grove, Ohio, or mailed from Coal Grove, Ohio, upon the arrival of the machinery there subject to the purchaser’s order, or at the very earliest, after they had been delivered to the common carrier unconditionally, consigned to the purchaser.
It is also urged that the brick company made no objection to the manner of shipment or to the demand that it should execute these notes and deliver them to the bank at Ironton and there receive the transfer of the bill of lading, but that defendant’s objection was based solely upon a claim it made for damages, and which it insisted must be allowed' before it would receive the property. We do not consider this of any importance whatever if plaintiff was not misled thereby. The burden is on the plaintiff to show compliance on its part. Defendant did refuse to execute and deliver these notes to the bank at Ironton. In its letter of August 22, 1906, in reply to the letter of the machinery company under date of August 21, 1906, it used this language: "We decline to accept the machinery upon the terms you state, and you had just as well order the machinery back.” If there was any reason why it had a right to refuse to accept the terms of delivery then proposed by the machinery company, that reason is now available to it. If it were willing to comply with the conditions proposed by the machinery company upon the condition that certain allowances be made it, it had the right to make such a proposition, but there is nothing in all this correspondence or any of this evidence that shows any waiver as to the manner and method of delivery provided in the *378 contract itself. The machinery company cannot claim that it was misled by the conduct of the defendant, for the account, dated August 31, 1906, was disapproved and returned to it. An explanation was demanded. The brick company answered : “The reason your statement is not correct is that we never received the machinery up to this date and not according to contract.” It is very evident from the record that they were then dealing at arms’ length, and there appears absolutely nothing to show that either was induced by the other to depart from the express terms of the contract itself.
Not only does it appear from this contract that the machinéry company had no right to demand the execution and delivery of these notes prior to the delivery of this machinery to a common carrier consigned to the brick company, or at a place other than the defendant’s place of business, but it also appears that by the terms of this contract the purchaser was not required to give a note for the first six-hundred-dollar payment to be made in thirty days. It is true that the contract provides that notes shall be given for deferred payments. It is also true that a payment to be made in thirty days is, in the absence of language expressing a contrary intention, a deferred payment, but it is very clear from the terms of the contract that it was not so considered by the parties and not intended to be evidenced by any promissory note whatever, but was in fact reckoned as a cash payment, and those payments that were to be deferred for four, eight and twelve months were considered the deferred payments *379 within the meaning and intent of the contract. This is made to appear from the fact that this $600 was to be paid in thirty days after the arrival of machinery on cars at Coal Grove, Ohio, while the notes that were to be given for the deferred payments should bear the same date as the bill of lading, even though the goods were delayed a fortnight in transit. If the payment of the $600 that was to be made in thirty days was intended to be included as one of the deferred payments, for which a note was to be given, then that note would be required under the language of the contract to bear the date of the bill of lading, notwithstanding the further terms of the contract provided for the reckoning of this thirty days from the date of the arrival of the machinery on cars at Coal Grove. A. note for thirty days bearing the same date as the bill of lading would not allow the purchaser thirty days in which to pay the same after the arrival of the machinery on cars at Coal Grove. In fact, under some circumstances of extraordinary delay occasioned by disastrous floods or other destructive agencies, the larger portion or the whole of the thirty days might expire between the date of the bill of lading and the arrival of the shipment at its place of destination. It is clear that this contract distinguishes between this $600 to be paid in thirty days after delivery and these payments to be made in four, eight and twelve months after date of bill of lading, and it is equally evident that it was not intended that any note should be given for the $600, or that this amount should bear any interest whatever; otherwise the contract would not have fixed a different date from which to reckon the time of payment *380 of this particular sum. Upon this construction of the contract the machinery company had no right to demand a note for this $600 prior to or after the delivery of the machinery sold.
It is averred in the petition that the plaintiff took back this dry-press brick machine and agitating clay feeder from defendant at its request and credited the defendant with the sum of $1,600 on the full contract price. There is no evidence whatever in support of this averment except the refusal of the defendant to accept delivery and to comply with the conditions precedent imposed by the plaintiff to a delivery of this machinery. Under the terms of this contract the plaintiff upon default in payment was entitled to take this machinery, but it was not entitled to. take part and leave part. In the absence of an agreement to that effect, it was not authorized to divide this contract and leave the dry pan with the defendant at a price fixed by it and retake the dry-press brick machine and agitating clay feeder, crediting an amount, also fixed by plaintiff, as the value of these two articles.
By the express terms of this contract defendant in error is still the owner of this dry pan. If it had fully performed the conditions of this contract, it would have the right to sue for the contract price, notwithstanding the provisions of the contract that it is to remain the owner of this property until the purchase price is fully paid, but a court can afford no relief to a plaintiff in a suit to recover upon a contract when it appears that the plaintiff did not substantially perform the terms of the contract on his part to be performed.
*381 In the absence of a subsequent agreement waiving the actual delivery of the balance of these goods or authorizing the defendant to retake them after delivery and credit the contract price with the value of the goods so retaken, the rights of the defendant in error as owner of this dry pan must be asserted in some other way than by an action predicated upon the contract to recover the portion of the contract price represented by its value.

The judgment of the circuit court affirming the judgment of the common pleas court on the first cause of action is reversed, and the judgment of the common pleas court on the first cause of action is reversed, and judgment here rendered for plaintiff in error on the first cause of action. The judgment of the circuit court affirming the judgment of the common pleas court on the second cause of action is affirmed.

Nichols, C. J., Shauck, Newman and Wilkin, JJ., concur.